| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION |
|---|---|

| | | |
|---|---|---|
| BRENT HEBERT, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| *Plaintiff(s)*, | § § | No. 4:20-cv-02059 |
| v. | § § | |
| FMC TECHNOLOGIES, INC., | § § | |
| *Defendant(s)*. | § | |

## PLAINTIFF BRENT HEBERT'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT
## AS TO EXEMPTION DEFENSES

MELISSA MOORE
  Tex. Bar No. 24013189
  S.D. Tex. Bar No. 25122
   melissa@mooreandassociates.net

CURT HESSE
  Tex. Bar No. 24065414
  S.D. Tex. Bar No. 968465
   curt@mooreandassociates.net

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street, Suite 1110
Houston, Texas 77002
Telephone: (713) 222-6775
Facsimile: (713) 222-6739
www.mooreandassociates.net

*Attorneys for Plaintiff Brent Hebert*

November 12, 2021

# TABLE OF CONTENTS

Table of Contents ....................................................................... ii

Table of Authorities ...................................................................iv

Nature & Stage of Proceeding ...................................................1

Statement of Facts .......................................................................2

Issue(s) to Be Ruled Upon by the Court ...................................5

Standard of Review......................................................................6

Summary of the Argument........................................................8

Argument & Authorities ............................................................9

    1.    The administrative exemption, professional exemption and the highly compensated employee exemption only apply to workers who are paid on a salary basis ...............................................9

    2.    Salaried workers typically receive the same amount each pay period regardless of the quality or quantity of the work performed.............................................................................. 10

    3.    Since Hebert was not (and the installation engineers are not) paid the prototypical salary, FMC needs to establish that (1) they were guaranteed to receive at least at least $455 per week and (2) there is a reasonable relationship between the weekly guaranteed amount and the installation engineers' total take-home pay—and it cannot.......... 11

        a.    FMC did not guarantee Hebert that he would receive anything, and it does not guarantee the installation engineers that they will receive anything.......................................... 12

        b.    Even assuming that there was a guarantee, there is not a reasonable relationship between the guaranteed amount and the amount actually earned by installation engineers like Hebert ................................................................................ 16

Conclusion ............................................................................. 21

Signature .............................................................................. 21

Certificate ............................................................................ 22

TABLE OF AUTHORITIES

**Cases**

*Auer v. Robbins*,
  519 U.S. 452 (1997) ........................................................................... 18

*Baton Rouge Bldg. & Constr. Council AFL-CIO v. Jacobs Constructors, Inc.*,
  804 F.2d 879 (5th Cir. 1986) ............................................................... 6

*Belt v. EmCare, Inc.*,
  444 F.3d 403 (5th Cir. 2006) .............................................................. 17

*Boudreaux v. Swift Transp. Co.*,
  402 F.3d 536 (5th Cir. 2005) ............................................................ 6, 7

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................. 6

*Corning Glass Works v. Brennan*,
  417 U.S. 188 (1974) ............................................................................. 5

*Hewitt v. Helix Energy Sols. Gp., Inc.*,
  ___ F.4th ___,
  2021 U.S. App. LEXIS 27215 (5th Cir. Sep. 9, 2021) ........................... passim

*Hughes v. Gulf Interstate Field Servs., Inc.*,
  878 F.3d 183 (6th Cir. 2017) ....................................... 14, 15, 16, 20

*Mello v. Sara Lee Corp.*,
  431 F.3d 334 (5th Cir. 2005) ............................................................... 6

*Snead v. EOG Res., Inc.*,
  No. 5:16-cv-1134,
  2018 U.S. Dist. LEXIS 31922 (W.D. Tex. Feb. 13, 2018) ...................... 15

*Triple Tee Golf, Inc. v. Nike, Inc.*,
  485 F.3d 253 (5th Cir. 2007) ............................................................... 6

*Tyler v. Cedar Hill Indep. Sch. Dist.*,
    426 F. App'x 306 (5th Cir. 2011) ...................................................................6

*Warfield v. Byron*,
    436 F.3d 551 (5th Cir. 2006) .........................................................................6

*Zannikos v. Oil Inspections (U.S.A.), Inc.*,
    605 F. App'x 349 (5th Cir. 2015) ...................................................................9

**Statutes**

29 U.S.C. § 213(a)(1) ............................................................................ passim

29 U.S.C. §§ 201-219 ........................................................................... passim

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) ..........................................................13

U.S. Dep't Lab., Wage & Hour Div.,
    Op. Letter No. FLSA2018-25 (Nov. 8, 2018) .......................................17, 18, 19

**Rules**

Fed. R. Civ. P. 5(a)(1) .................................................................................22

Fed. R. Civ. P. 5(b) ....................................................................................22

Fed. R. Civ. P. 56 .........................................................................................6

**Regulations**

29 C.F.R. § 541.200(a)(1) ......................................................................... 9, 10

29 C.F.R. § 541.300(a)(1) ......................................................................... 9, 10

29 C.F.R. § 541.601 .............................................................................. passim

29 C.F.R. § 541.601(a) .................................................................................9

29 C.F.R. § 541.601(b)(1) .............................................................................10

29 C.F.R. § 541.602(a) ................................................................................... 10, 11

29 C.F.R. § 541.604(b) .............................................................................12, 13, 16, 17

29 C.F.R. §§ 541.200-541.204 ....................................................................... 1, 5, 8, 21

29 C.F.R. §§ 541.300-541.304 ....................................................................... 1, 5, 8, 21

29 C.F.R. §§ 541.600-541.607 ...............................................................................9

29 C.F.R. pt. 541 ...............................................................................................10

Defining and Delimiting the Exemptions for Executive, Administrative,
  Professional, Outside Sales and Computer Employees,
  84 Fed. Reg. 51,230 (Sep. 27, 2019) ........................................................... 9, 13

## NATURE & STAGE OF PROCEEDING

Brent Hebert (referred to as "Hebert"), a former employee of FMC Technologies, Inc. (referred to as "FMC"), claims that he and others were denied overtime in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 ("FLSA"). (*See generally*, Pl.'s Am. Compl. (Doc. 18).) FMC claims that Hebert and those whom he seeks to represent are exempt from the overtime requirements of the FLSA under 29 U.S.C. § 213(a)(1) and 29 C.F.R. §§ 541.200-541.204, 541.300-541.304, 541.601 as administrative employees, professional employees and/or highly compensated employees. (*See*, Def.'s Answer (Doc. 8) 8-9, ¶¶ 4-6.) However, because Hebert was not paid on a salary basis, the Court should enter partial summary judgment dismissing those defenses with prejudice.

STATEMENT OF FACTS

1.     FMC claims to be "a leading technology provider to the traditional and new energies industry[,] delivering fully integrated projects, products, and services." *See*, TechnipFMC—About Us, https://www.technipfmc.com/en/about-us/ (last visited Nov. 11, 2021).

2.     As part of its suite of services, FMC employs installation engineers who are responsible for, among other things, "[p]roviding operational input to product design and development, technical planning for field support work to ensure job readiness, creation of technical documentation and procedures, execution of onshore and offshore field support, completion of project closeout reviews and documentation, direct customer interface, [and] product and system troubleshooting." Ex. A, Installation Engineer II Job Description at p. 1; *see also*, Ex. B, Installation Engineer III Job Description at p. 1.

3.     FMC employed Hebert as a Rotational Engineer (from March 18, 2013, to August 6, 2015), an Installation Engineer I (from August 7, 2015, to June 10, 2017), an Installation Engineer II (from June 11, 2017, to December 9, 2017) and as an Installation Engineer III (from December 10, 2017, to February 3, 2020). Ex. C, Letter re: Job Offer (Mar. 18, 2013) p. 1; Ex. D, Letter re: Promotion (Aug. 7, 2015); Ex. E, Letter re: Promotion (Dec. 12, 2019); Ex. F, Def.'s Resp. Pl.'s Interrog. Nos. 1, 3.

4.      FMC pays installation engineers, including Hebert, a salary plus a daily bonus (called a "field service premium") when they worked in the field. Ex. F, Def.'s Resp. Pl.'s Interrog. No. 6; *see also*, Simmons Dep. (Sep. 29, 2021) 48:20-23 (installation engineers entitled to field service premium for "work[ing] in the field[]"); *id*. at 46:1-6 (field service premium is a "daily bonus"); *id*. at 52:1-18; *id*. at 55:6-8 ("The field service premium[] ... is a daily bonus that is *purely based off the time that is spent working in the field*[.]" (emphasis added)).

5.      An installation engineer's field service premium is the lesser of $425 or thirteen percent (13%) of the installation engineer's annual salary divided by twenty-eight. Simmons Dep. (Sep. 29, 2021) 48:24-49:2.

6.      Often times, the total take-home pay for an installation engineer, including Hebert, is two times—or more—his or her base salary. Simmons Dep. (Sep. 29, 2021) 57:8-58:23; *id*. at 59:25-60:15; *id*. at 56:1-57:7; *see also*, Ex. G, Sample Paystubs (field service premium denoted as "fsp" on paystubs).

7.      In other words, the field service premium for installation engineers, including Hebert, is often *more* than his or her base salary. *Id*.

8.      FMC does not guarantee installation engineers, like Hebert, that they will always be paid at least $455 (or $684 or any other amount) per week regardless of the quantity or quality of their work; they are, instead, at-will employees, and FMC

expressly reserves the right to reduce their pay for any reason and with or without notice to them. Simmons Dep. (Sep. 29, 2021) 46:25-48:12; Ex. C, Letter re: Job Offer (Mar. 18, 2013) p. 1 ("Nothing in this [offer] letter shall … be construed so as to create a contract, promise *or guarantee* … ." (emphasis added).)

9.    When installation engineers, including Hebert, work in the field, they typically work six or seven days per week and twelve hours per day. Simmons Dep. (Sep. 29, 2021) 61:22-62:4; Hebert Decl. (Dec. 10, 2020) ¶ 8; *see also*, Ex. F, Def.'s Resp. Pl.'s Interrog. No. 4.

10.    Even though they work more than forty hours per week, FMC does not pay installation engineers, including Hebert, overtime because it claims that they are exempt. Simmons Dep. (Sep. 29, 2021) 11:18-12:1; Hebert Decl. (Dec. 10, 2020) ¶¶ 8-12; *see also*, Ex. F, Def.'s Resp. Pl.'s Interrog. No. 11; Ex. G, Sample Paystubs.

## Issue(s) to Be Ruled Upon by the Court

The issue to be ruled upon by the Court is:

> whether the summary judgment evidence establishes as a matter of law that FMC does not pay installation engineers on a salary basis, an essential element of the company's affirmative defenses[1] that installation engineers are exempt from the overtime requirements of the FLSA under 29 U.S.C. § 213(a)(1) and 29 C.F.R. §§ 541.200-204, 541.300-541.304, 541.601 as administrative employees, professional employees and/or highly compensated employees.

---

[1] Exemptions from the overtime requirements of the FLSA are affirmative defenses, and the burden to establish them rests squarely on the employer. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974).

STANDARD OF REVIEW

"Summary judgment is appropriate [if the summary-judgment evidence shows] 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Mello v. Sara Lee Corp.*, 431 F.3d 334, 335 (5th Cir. 2005) (quoting Fed. R. Civ. P. 56). In making that determination, the Court reviews the evidence and draws all inferences in the light most favorable to the nonmoving party. *Baton Rouge Bldg. & Constr. Council AFL-CIO v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir. 1986). "The movant bears the [initial] burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)). To meet his summary-judgment burden, the movant does not, though, need to negate the elements of the nonmovant's claims or defenses. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

Once the party moving for summary judgment meets its threshold burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial[]" to overcome summary judgment. *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *see also*, *Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 F. App'x 306, 308 (5th Cir. 2011); *see also*, *Boudreaux*, 402 F.3d at 540 ("Once the moving party has demonstrated the absence

of a material fact issue, the non-moving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (citations and quotations omitted)). "This burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux*, 402 F.3d at 540. (citations and quotations omitted). Instead, the nonmovant "must set forth sufficient facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Id*. "A dispute as to a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmovant." *Id*.

## SUMMARY OF THE ARGUMENT

Since the summary-judgment evidence establishes, as a matter of law, that FMC did not pay Hebert—and does not pay any other installation engineers—on a salary basis, they are not exempt from the overtime requirements of the FLSA under 29 U.S.C. § 213(a)(1) and 29 C.F.R. §§ 541.200-541.204, 541.300-541.304, 541.601 as administrative employees, professional employees and/or highly compensated employees. The Court should, therefore, enter summary judgment against FMC and dismiss those affirmative defenses with prejudice.

ARGUMENT & AUTHORITIES

1.  **The administrative exemption, professional exemption and the highly compensated employee exemption only apply to workers who are paid on a salary basis.**

"The FLSA's overtime provisions 'shall not apply with respect to … any employee employed in a bona fide … administrative[] or professional …. capacity[] … .'" *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 352 (5th Cir. 2015) (quoting 29 U.S.C. § 213(a)(1)). They similarly do not apply to highly compensated employees (1) who make at least $100,000[2] per year; (2) whose primary duty includes performing office or non-manual work and (3) who customarily and regularly performs at least one of the exempt duties or responsibilities of an exempt executive, administrative or professional employee. 29 C.F.R. § 541.601(a). Common to each of those exemptions is the requirement that the employee be paid on a *salary* basis of at least $455[3] per week. 29 C.F.R. § 541.200(a)(1) (administrative employees); *id*. at § 541.300(a)(1) (professional employees); *id*. at § 541.601 (highly compensated employees); *see also*, 29 C.F.R. §§ 541.600-541.607 (salary requirements).

---

[2] On January 1, 2020, this amount was increased to $107,432. *See*, Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 84 Fed. Reg. 51,230, 51,231 (Sep. 27, 2019). The change is not relevant to the issues raised in this motion.

[3] On January 1, 2020, this amount was increased to $684. *See*, 84 Fed. Reg. at 51,231. The change is not relevant to the issues raised in this motion.

2. **Salaried workers typically receive the same amount each pay period regardless of the quality or quantity of the work performed.**

The general rule for payment on a salary basis is set forth in 29 C.F.R. § 541.602(a):

> *General rule*. An employee will be considered to be paid on a "salary basis" within the meaning of [29 C.F.R. pt. 541] if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.602(a). It, of course, describes the prototypical salary: An employee receives a sum certain every week (or month) regardless of how much (or little) she works. In other words, the hallmark of the traditional salary is a predictably recurring weekly or less frequent (for example, monthly) wage even where the hours worked vary, many times unpredictably. *Id*. It matters legally whether an employee is paid on a salary basis because it is an essential element of numerous overtime exemptions, including the administrative exemption, the professional exemption and the highly compensated employee exemption. *See*, 29 C.F.R. § 541.200(a)(1) (administrative employees must be paid on salary basis); *id*. at § 541.300(a)(1) (professional employees must be paid on a salary basis); *id*. at § 541.601(b)(1) (highly compensated employee must be paid on salary basis).

3. **Since Hebert was not (and the installation engineers are not) paid the prototypical salary, FMC needs to establish that (1) they were guaranteed to receive at least at least $455[4] per week and (2) there is a reasonable relationship between the weekly guaranteed amount and the installation engineers' total take-home pay—and it cannot.**

Hebert was not paid the prototypical salary described in 29 C.F.R. § 541.602(a).

On that point, there is no dispute. Ex. F, Def.'s Resp. Pl.'s Interrog. No. 6 (Hebert and other installation engineers paid on a salary-plus-daily-bonus basis); Ex. G, Sample Paystubs; *see also*, Simmons Dep. (Sep. 29, 2021) 46:1-6, 48:20-23, 52:1-18; *id*. at 55:6-8 ("The field service premium[] … is a daily bonus that is *purely based off the time that is spent working in the field*[.]" (emphasis added)). Indeed, FMC's own description of how it paid Hebert and the other installation engineers more than suggests that their pay was tied directly to the quantity of their work, which is fundamentally incompatible with 29 C.F.R. § 541.602(a). There is, though, an alternative way to comply with the salary-basis requirement:

> An exempt[5] employee's earnings may be computed on … a *daily* … basis, without … violating the salary basis requirement, if the employment arrangement also includes a *guarantee* of at least the minimum weekly required amount paid on a salary basis regardless of the number of … *days* … worked, *and a reasonable relationship exists between the guaranteed amount and the amount actually earned*.

---

[4] See *supra* note 2.

[5] This subsection is not limited to any individual exemption or exemptions.

> … The reasonable relationship requirement applies only if the employee's pay is computed on [a] … *daily*[6] … basis.

29 C.F.R. § 541.604(b) (emphasis added).

Simply put, the *only* way that FMC's pay practices in this case even arguably comply with the salary-basis requirement of its exemption defenses is if 29 C.F.R. § 541.604(b) applies. So in order for FMC to overcome summary judgment with respect to its exemption defenses, it must set forth specific facts showing that there is a genuine issue as to whether it complied with 29 C.F.R. § 541.604(b). That regulation, which, again, is an alternative method for satisfying the salary-basis requirement of any exemption that has one, has its own unique elements. *Hewitt v. Helix Energy Sols. Gp., Inc.*, ___ F.4th ___, 2021 U.S. App. LEXIS 27215, at *9-*10 (5th Cir. Sep. 9, 2021). They are the minimum weekly guarantee and the reasonable relationship test. *Id*.

     a.  *FMC did not guarantee Hebert that he would receive anything, and it does not guarantee the installation engineers that they will receive anything.*

In order for FMC to satisfy the salary-basis requirement of its exemption defenses, it must be able to show that "the employment arrangement … includes a

---

[6] FMC has admitted that it calculated Hebert's pay on a daily basis. Simmons Dep. (Sep. 29, 2021) at 55:6-8 ("The field service premium[] … is a *daily bonus* that is *purely based off the time that is spent working in the field*[.]" (emphasis added)). Accordingly, this regulation expressly applies to the facts of this case.

guarantee of at least the minimum weekly required amount[7] paid on a salary basis regardless of the number of hours, days or shifts worked[.]" 29 C.F.R. § 541.604(b). FMC does not guarantee installation engineers, like Hebert, that they will always be paid at least $455 (or $684 or any other amount) per week regardless of the quantity or quality of their work; they are, instead, at-will employees, and FMC expressly reserves the right to reduce their pay for any reason and with or without notice to them. Simmons Dep. (Sep. 29, 2021) 46:25-48:12; Ex. C, Letter re: Job Offer (Mar. 18, 2013) p. 1 ("Nothing in this [offer] letter shall … be construed so as to create a contract, promise *or guarantee* … ." (emphasis added).) In other words, even assuming Hebert worked for FMC for ten years, his employment was no more guaranteed on the first day of year eleven than it was on the first day of year one—and that includes his rate of pay. *See, e.g., Guarantee*, Black's Law Dictionary (10th ed. 2014) ("The assurance that a contract or legal act will be duly carried out."). Simply put, FMC has the absolute and unqualified right to reduce rates of pay for any of its at-will employees, including installation engineers, for any reason and with or without notice to them. It does not matter that the company elects not to do so. There is no guarantee.

---

[7] For years, the minimum weekly required amount was $455; it was increased to $684 on January 1, 2020. *See*, 84 Fed. Reg. at 51,231. Again, the change is not relevant to the issues raised in this motion.

The United States Court of Appeals for the Sixth Circuit has considered this precise issue. In reversing summary judgment in favor of the employer, the Sixth Circuit explained that the critical inquiry in determining whether a pay practice satisfies the salary-basis requirements of the § 13(a)(1) exemptions, is whether the payments made to the employees were "a matter of right or a matter of grace." *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183, 191 (6th Cir. 2017); *see also*, *id.* ("If [the employees] are to qualify as exempt ..., it matters whether their minimum weekly salary was in fact guaranteed, or whether it was simply something that [the employer] had not so far availed itself of its right to reduce."); *see also*, *id.* at 193 ("The operative idea behind a guarantee, in other words, is in this context that the employer is *contractually obligated* not to change its mind and reduce whatever amount it previously determined to provide." (emphasis added)).

In *Hughes*, the employer argued that two pieces of evidence established a guarantee as a matter of law: verbal assurances made to the employees at the outset of their employment and pay records showing that they in fact received the same amount of pay each week. *Id*. at 191-93. The Sixth Circuit disagreed. *Id*. Why? Because "[i]t is not enough under the salary-basis test for an employer to show only that the employee received the same amount of pay each week, as doing so would negate the remainder of the test." *Id*. (citations and quotations omitted); *see also*, *id*. ("While it is possible that

– 14 –

an employer who provided consistent weekly pay for decades could fall back on that longstanding practice as stronger evidence of a guarantee, that is not this case. Here, instead, the record indicates that [the employees] worked as welding inspectors on the pipeline project for approximately fifteen and eight months, respectively.").

In this case, there are no verbal or written guarantees of any kind. Instead, FMC appears to rely on the fact that Hebert actually received more than $455 per week during his employment with the company. *See, e.g.*, Simmons Dep. (Sep. 29, 2021) 54:14-55:25. That, though, is not enough because it "negate[s] the remainder of the [salary-basis] test." *Hughes*, 878 F.3d at 192. Unlike acquiring rights to real property through adverse possession, the length of an at-will employment relationship, by itself, will *never* obligate an employer "not to change its mind and reduce whatever amount it previously determined to provide." *Id*. at 193; *see also*, *Snead v. EOG Res., Inc.*, No. 5:16-cv-1134, 2018 U.S. Dist. LEXIS 31922, at *11 (W.D. Tex. Feb. 13, 2018) ("However, evidence that Plaintiff regularly received a qualifying amount of pay is not the same as evidence that he was guaranteed to receive that amount regardless of the quality or quantity of work he performed."). On top of that, the sole piece of documentary evidence that outline the terms and conditions of Hebert's employment expressly disclaims any guarantee. Ex. C, Letter re: Job Offer (Mar. 18, 2013) p. 1 ("Nothing in this [offer] letter shall ... be construed so as to create a contract, promise *or guarantee* ... ."

– 15 –

(emphasis added).) *Cf.*, *Hughes*, 878 F.3d at 193 ("The operative idea behind a guarantee, in other words, is in this context that the employer is *contractually obligated* not to change its mind and reduce whatever amount it previously determined to provide." (emphasis added)). Ultimately, since there is no guarantee, the installation engineers, including Hebert, are not exempt.

b.  *Even assuming that there was a guarantee, there is not a reasonable relationship between the guaranteed amount and the amount actually earned by installation engineers like Hebert.*

In order for FMC to satisfy the salary-basis requirement of its exemption defenses, it must also be able to show that "a reasonable relationship exists between the guaranteed amount and the amount actually earned." 29 C.F.R. § 541.604(b). "[T]he reasonable relationship test ensures that the minimum weekly guarantee is not a charade—it sets a *ceiling* on how much the employee can expect to work in exchange for his normal paycheck, by preventing the employer for purporting to pay a stable weekly amount without regard to the hours worked, while in realty routinely overworking the employee far in excess of the time the weekly guarantee contemplates." *Hewitt*, 2021 U.S. App. LEXIS 27215 at *10. "[W]ithout the reasonable-relationship test, employees could routinely receive weekly pay of $1,500 or more and yet be guaranteed only the minimum required [amount] …" *Id*. at *10-*11 (citations and quotations omitted). "But such a pay system would be inconsistent with the salary basis concept *and the salary*

*guarantee would be nothing more than an illusion*." *Id.* at \*11 (citations and quotations omitted) (cleaned up).

As the Department of Labor has explained:

> The regulations provide that a guaranteed weekly salary of $500 is roughly equivalent—and therefore reasonably related—to usual weekly earnings of $600 to $750. The ratio of $750 per week to $500 per week is 1.5 to 1. Accordingly, a 1.5-to-1 ratio of actual earnings to guaranteed weekly salary is a "reasonable relationship" under the regulations.
>
> \*\*\*
>
> Because your client's employees receive a guaranteed weekly salary of $2,100, any usual weekly earnings up to $3,150 will satisfy the "reasonable relationship" test ($2,100 × 1.5). Usual earnings of $3,761, however materially exceed a 1.5-to-1 ratio and are not "roughly equivalent" to the guaranteed weekly salary of $2,100. The regulations, of course, do not provide that a 1.5-to-1 ratio of actual earnings to guaranteed weekly salary is the absolute maximum permissible ratio to satisfy the "reasonable relationship" test. But in the facts and circumstances presented here, *usual earnings that are nearly 1.8-times—close to double—the guaranteed weekly salary materially exceed the permissible ratios found in the regulations and are not roughly equivalent to that salary under* [*29 C.F.R.*] *§ 541.604(b)*.

U.S. Dep't Lab., Wage & Hour Div., Op. Letter No. FLSA2018-25 (Nov. 8, 2018) p. 2 (emphasis added) (internal citations and quotations omitted).

Because 29 C.F.R. § 541.604(b) does not precisely define "reasonable relationship" or "roughly equivalent," agency opinion letters, like the one quoted above, are "controlling unless plainly erroneous or inconsistent with the regulation." *Belt v. EmCare, Inc.*, 444 F.3d 403, 408 (5th Cir. 2006) (citing *Auer v. Robbins*, 519 U.S. 452,

409 (1997)). And applying the reasoning in that opinion letter—and the Fifth Circuit's

holding in *Hewitt*—FMC's pay practice can *never* qualify as a salary because even in all

but two-day workweeks, an employee's usual earnings are more than 1.5 times his or her

guaranteed weekly salary. *See*, U.S. Dep't Lab., Wage & Hour Div., Op. Letter No.

FLSA2018-25 (Nov. 8, 2018) p. 2. Take the facts of this case, for example. FMC claims

that it pay installation engineers like Hebert on a salary-plus-daily-bonus basis.  Ex. F,

Def.'s Resp. Pl.'s Interrog. No. 6; *see also*, Simmons Dep. (Sep. 29, 2021) 48:20-23

(installation engineers entitled to field service premium for "work[ing] in the field[]");

*id*. at 46:1-6 (field service premium is a "daily bonus"); *id*. at 52:1-18; *id*. at 55:6-8 ("The

field service premium[] … is a daily bonus that is *purely based off the time that is spent

working in the field*[.]" (emphasis added)).  The daily bonus is the lesser of $425 or

thirteen percent (13%) of the installation engineer's annual salary divided by twenty-

eight. Simmons Dep. (Sep. 29, 2021) 48:24-49:2.

Now assume, for purposes of this motion, all of that is true. The ratio of Hebert's

usual earnings to his weekly salary materially exceeds the permissible ratios found in

the regulations (and described in the Department of Labor's opinion letter and the Fifth

Circuit's opinion in *Hewitt*) in all but two-day workweeks (during which there would

be no overtime liability) as a matter of arithmetical fact:

| Salary[8] | Days Worked | Usual Earnings | Ratio |
|---|---|---|---|
| $1,730.77 | 1 | $2,148.63 | 1.24-to-1 |
| $1,730.77 | 2 | $2,566.48 | 1.48-to-1 |
| $1,730.77 | 3 | $2,984.34 | 1.72-to-1 |
| $1,730.77 | 4 | $3,402.20 | 1.97-to-1 |
| $1,730.77 | 5 | $3,820.05 | 2.21-to-1 |
| $1,730.77 | 6 | $4,237.91 | 2.45-to-1 |
| $1,730.77 | 7 | $4,655.77 | 2.69-to-1 |

And since installation engineers like Hebert work six or seven days per week, their usual earnings would have always been more than 1.5 times their guaranteed weekly salaries. Simmons Dep. (Sep. 29, 2021) 61:22-62:4; Hebert Decl. (Dec. 10, 2020) ¶ 8; *see also*, Ex. F, Def.'s Resp. Pl.'s Interrog. No. 4. Therefore, the remuneration paid to installation engineers, including Hebert, is not a salary for FLSA purposes as a matter of law because, at all times, their usual earnings are not reasonably related to their weekly salaries. *See*, U.S. Dep't Lab., Wage & Hour Div., Op. Letter No. FLSA2018-25 (Nov. 8, 2018) p. 2. Installation engineers, including Hebert, are therefore not exempt.

---

[8] At the time of his termination, Hebert's annual salary was $90,000 per year and his daily bonus was $417.86. Hebert Decl. (Dec. 10, 2020) ¶ 10.

"It may seem strange, on its face, that employees who earned an annualized rate of more than $100,000 did not necessarily qualify as 'highly compensated employees.'" *Hughes*, 878 F.3d at 193; *see also*, *Hewitt*, 2021 U.S. App. LEXIS at *8-*20. "But regardless of whether good reasons exist, [a court] must follow the legal meaning of the terms [used in the regulations] rather than [its] intuitive sense of the meaning of the words." *Hughes*, 878 F.3d at 193; *see also*, *Hewitt*, 2021 U.S. App. LEXIS at *20 ("Our job is to follow the text—not to bend the text to avoid perceived negative consequences for the business community."). Accordingly, the Court should enter summary judgment against FMC dismissing its exemption defenses with prejudice.

CONCLUSION

Since FMC did not pay installation engineers, including Hebert, on a salary basis, they are not exempt from the maximum hour requirements of the FLSA under 29 U.S.C. § 213(a)(1) and 29 C.F.R. §§ 541.200-541.204, 541.300-541.304, 541.601 as administrative employees, professional employees and/or highly compensated employees. The Court should, therefore, enter summary judgment under Fed. R. Civ. P. 56, dismissing those defenses with prejudice.

Respectfully Submitted,

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street, Suite 1110
Houston, Texas 77002-1055
Telephone: (713) 222-6775
Facsimile: (713) 222-6739

By: _____
Melissa Moore
Tex. Bar No. 24013189
S.D. Tex. Bar No. 25122
melissa@mooreandassociates.net
Curt Hesse
Tex. Bar. No. 24065414
S.D. Tex. Bar No. 968465
curt@mooreandassociates.net

**ATTORNEYS FOR PLAINTIFF
BRENT HEBERT**

– 21 –

## CERTIFICATE OF SERVICE

As required by Fed. R. Civ. P. 5(a)(1), I certify that I served a copy of this document on all parties or their attorney(s) of record—who are listed below—in accordance with Fed. R. Civ. P. 5(b) as follows on the date indicated:

Mr. Todd W. Mensing
tmensing@azalaw.com
Mr. Joseph Y. Ahmad
joeahmad@azalaw.com
Mr. Rey M. Flores
rflores@azalaw.com
Ms. Jordan L. Warshauer
jwarshauer@azalaw.com
AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING P.C.
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Facsimile: (713) 655-0062
*Attorney(s) for Defendant FMC Technologies, Inc.*

- [ ] mail
- [ ] personal delivery
- [ ] leaving it at [ ] office [ ] dwelling
- [ ] leaving it with court clerk
- [ ] electronic means
- [ ] other means
- [x] CM/ECF system

November 12, 2021
Date

Melissa Moore